**Case CC-25-1037**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

Leslie Klein, an individual; The Second Amended Klein Living Trust, a trust; The Marital Deduction Trust of Erika Klein, a trust; The Survivor's Trust of Leslie Klein, a trust; Barbara Klein, an individual,

Appellants

v.

Bradley D. Sharp, Chapter 11 Trustee of Leslie Klein,

Appellee

On Appeal from the United States Bankruptcy Court
for the Central District of California
BK Case No. 2:23-bk-10990
Honorable Neil W. Bason

## APPELLEE'S ANSWERING BRIEF

Jeffrey W. Dulberg (CA State Bar No. 181200)
John W. Lucas (CA State Bar No. 271038)
Jeffrey P. Nolan (CA Bar No. 158923)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:    jdulberg@pszjlaw.com
           jlucas@pszjlaw.com
           jnolan@pszjlaw.com

*Counsel for Bradley D. Sharp,*
*Chapter 11 Trustee of Leslie, Appellee*

# TABLE OF CONTENTS

Page

I. JURISDICTIONAL STATEMENT ................................................................1

II. SUMMARY OF ARGUMENT.....................................................................2

III. STATEMENT OF THE CASE ....................................................................4

      A.     The Debtors' Schedules of Assets and Liabilities ................4

      B.     June St. Property Deed and Klein Living Trust ..................5

      C.     The June St. Action and Appellants' Answer ......................5

      D.     Motion to Join Necessary Parties ...........................................7

      E.     The Trustee's Summary Judgment Motion ..........................7

      F.     The Turnover Motion .................................................................8

IV. STANDARD OF REVIEW.........................................................................9

V. THE OPENING BRIEF IS AN IMPERMISSIBLE ATTACK ON
     THE MSJ ORDER AND FAILS TO ADDRESS THE
     BANKRUPTCY COURT'S APPROVAL OF THE TURNOVER
     MOTION .......................................................................................10

      A.     The Turnover Order Should be Affirmed Because
            the June St. Property is Property of the Estate, in the
            Debtor's Possession and Has Substantial Value ................11

      B.     The Opening Brief Should Be Stricken Because It
            Does Not Contain Any Citations to the Record on
            Appeal .........................................................................................13

      C.     The Issues Raised in the Opening Brief are an
            Impermissible Collateral Attack on the MSJ Order ..........14

VI. TO THE EXTENT THE PANEL CONSIDERS THE
     ARGUMENTS IN THE OPENING BRIEF THEY SHOULD BE
     SUMMARILY DISMISSED BECAUSE THEY ARE
     FACTUALLY INCORRECT AND NOT SUPPORTED BY
     APPLICABLE LAW ..................................................................16

      A.     The Bankruptcy Court Properly Granted Judgment
            Quieting Title To The June St. Property With Respect
            To The Parties Named In The Adversary Proceeding .......16

B.    **The Complaint Was Duly Served on the Affected Parties Who Accepted Service Of The Complaint And Waived Any Argument The Bankruptcy Court Cannot Enter Judgment Against Trusts**..............................21

1.    **The Trustees of the Second Amended Klein Living Trust and the Sub-Trusts Were Duly Sued and Expressly Accepted Service**....................................21

2.    **Appellants Waived Any Defense Regarding Lack of Capacity to be Sued** ................................22

C.    **The Klein Living Trust And The Sub-Trusts Are Self-Settled And The Trust Res Is Property Of The Estate** .....................................................24

D.    **The June St. Property Is Owned By the Klein Living Trust And Was Never Conveyed To Any Other Trust** ......30

E.    **The Recordation of the Klein Living Trust Upon Erika's Death Had No Consequence Because its Terms Did Not Automatically Effectuate a Transfer of the June St. Property**.........................................31

F.    **Barbara's Presence In The June St. Property Was Insufficient To Put The Trustee On Notice Of Her Life Estate And Defeat His Status As A Bone Fide Purchaser** .................................................37

G.    **Appellants' Arguments Regarding Estoppel Were Never Argued And Have Been Waived And May Not Be Considered On Appeal** .....................................41

**VII. CONCLUSION**..............................................................42

# CASES

*Armstrong v. Brown*,
   768 F.3d 975 (9th Cir. 2014) ...............................................................42

*Ayers v. Richmond*,
   895 F.2d 1267 (9th Cir. 1990) ..............................................................20

*Bier v. Leisle*,
   172 Cal. 432 (1916) ..............................................................................36

*Blackburn v. Bucksport & E. R. R. Co.*,
   7 Cal. App. 649 (Cal. App. 1908) .........................................................19

*Carloss v. County of Alameda*, 1st District Court of Appeal
   242 Cal. App. 4th 116 (2015) ...............................................................28

*Cutter v. Seror* (*In re Cutter*),
   398 B.R. 6, 20 and 21 (B.A.P. 9th Cir. 2008) ......................................26

*De Saracho v. Custom Food Mach., Inc.*,
   206 F.3d 874 (9th Cir. 2000) ................................................................23

*Dela Rosa v. Scottsdale Memorial Health Systems, Inc.*,
   136 F.3d 1241 (9th Cir. 1998) ..............................................................13

*Estate of Heggstad*,
   16 Cal. App. 4th 943 (Cal. App. 1993) .................................................30

*Gotlieb v. Rose* (*In re Khalil*),
   2015 Bankr. LEXIS 1976 (Bankr. C.D. Cal. 2017) .............................29

*Horton v. Kyburz*,
   53 Cal. 2d 59, 66 (1959) ................................................................. 33, 38

*Howerton v. Designer Homes by Georges, Inc.*,
   950 F.2d 281 (5th Cir. 1992) ................................................................23

*In re Fisher*,
   67 B.R. 666 (Bankr. D. Colo. 1986) .....................................................39

*In re Honkanen*,
   446 B.R. 373 (B.A.P. 9th Cir. 2011) ....................................................36

*In re Marriage of Brooks & Robinson*
   (2008) 169 Cal. App. 4th 176 ...............................................................29

*In re Marriage of Fossum*
   (2011) 192 Cal.App.4th 336, 121 Cal. Rptr. 3d 195 ............................28

*In re Mercury Interactive Corp. Sec. Litig.*,
    618 F.3d 988 (9th Cir. 2010) ................................................................41

*In re Neuton*,
    922 F.2d 1379 (9th Cir. 1990) ..............................................................25

*In re Salkin*,
    526 B.R. 31 (Bankr. C.D. Cal. 2015) ........................................... 25, 26

*In re Tleel*,
    876 F.2d 769 (9th Cir. 1989) ................................................... 33, 38, 39

*In re Washburn & Roberts, Inc.*,
    795 F.2d 870 (9th Cir. 1986) .......................................................... 32, 38

*In re Witwer*,
    148 B.R. 930 (Bankr. C.D. Cal. 1992) ..................................................25

*Klamath Land & Cattle Co. v. Roemer*,
    12 Cal. App. 3d 613 (Cal. App. 1970) ...................................................31

*Komatsu, Ltd. v. States S.S. Co.*,
    674 F.2d 806 (9th Cir. 1982) ................................................................42

*Lang v. Tex. & Pac. Ry. Co.*,
    624 F.2d 1275, 1277 (5th 1980) ...........................................................22

*Melendrez v. D & I Investment, Inc.*,
    127 Cal. App. 4th 1238 (Cal. App. 2005) ...................................... 33, 38

*Metcalf v. Drexel Lending Grp.*, No. 08-CV-00731 W POR, 2008 U.S. Dist.
    LEXIS 87420 (S.D. Cal. Oct. 29, 2008) ...............................................18

*Moses v. Southern California Permanente Med. Group*,
    167 F.3d 470 (9th Cir. 1999) ................................................................24

*Nelson v. California Trust Co.*,
    33 Cal. 2d 501 (Cal. 1949) ...................................................................25

*Patterson v. Shumate*,
    504 U.S. 753 (1992) .............................................................................25

*Perlow v. Perlow*,
    128 B.R. 412 (E.D.N.C. 1991) .............................................................39

*Rafftery v. Kirkpatrick*,
    29 Cal. App. 2d 503 (Cal. App. 1938) .......................................... 33, 39

*Ruiz v. Affinity Logistics Corp.*,
    667 F.3d 1318 (9th Cir. 2012) ..............................................................41

*Santos v. Alaska Bar Assoc.*,
   618 F.2d 575 (9th Cir. 1980) ...............................................................23

*Seror v. Stone (In re Automated Fin. Corp.)*,
   2011 Bankr. LEXIS 291 (Bankr. C.D. Cal. Jan. 25, 2011) ..................18

*Summers v. Interstate Tractor & Equipment Co.*,
   466 F.2d 42 (9th Cir. 1972) ................................................................23

*Swaim v. Moltan Co.*,
   73 F.3d 711 (7th Cir. 1996) ................................................................23

*Syncom Capital Corp. v. Wade*,
   924 F.2d 167 (9th Cir. 1991) ..............................................................13

*Thomas v. Peterson*,
   (1931) 213 C. 672, 3 P.2d. 306) .........................................................28

*Turner v. Wells Fargo Bank NA (In re Turner)*,
   859 F.3d 1145 (9th Cir. 2017) ............................................................20

*Yee v. Panrox Internat. (USA), Inc.*,
   97 Cal. App. 5th 470 (2nd Dist. 2023) ...............................................28

*Yokeno v. Mafnas*,
   973 F.2d 803 (9th Cir. 1992) ..............................................................18

## STATUTES

11 U.S.C. § 544 .................................................................... 32, 33, 38, 39

28 U.S.C. § 1334 ......................................................................................1

28 U.S.C. § 157 .........................................................................................1

Cal. Evid. Code § 1600(a) ......................................................................28

Cal. Evid. Code § 638 .............................................................................29

Cal. Evid. Code § 662 .............................................................................28

## RULES

B.A.P. 9th Cir. R. 8018(b)-1 ..................................................................13

Fed. R. App. P. 10(b)(2) .........................................................................13

Appellee, Bradley D. Sharp, Chapter 11 Trustee (the "**Trustee**" or the "**Appellee**") of the bankruptcy estate of Leslie Klein (the "**Debtor**"), submits his brief (the "**Answering Brief**") in response to the Appellants' brief [B.A.P. Docket No. 5] (the "**Opening Brief**") and represents as follows:

## I.

## JURISDICTIONAL STATEMENT

This is an appeal of the *Order Granting Motion of Chapter 11 Trustee (1) Restoring Possession of the Property Located at 322 N. June St., Los Angeles, California to the Trustee and Compelling Debtor to Vacate the Property* (the "**Turnover Order**") (ER 5-7) of the United States Bankruptcy Court for the Central District of California, Los Angeles Division ("**Bankruptcy Court**"), dated February 13, 2025, granting the Trustee's *Motion of Chapter 11 Trustee (1) Restoring Possession of the Property Located at 322 N. June St., Los Angeles, California to the Trustee and Compelling Debtor to Vacate the Property* (ER ) ("**Turnover Motion**"). (ER 1510-1525). The Bankruptcy Court had jurisdiction to enter the Turnover Order, pursuant to 28 U.S.C. § 1334, and such matter constitutes a core proceeding, pursuant to 28 U.S.C. § 157 (b)(2)(A), (E), and (M). On February 26, 2025, Appellants filed a notice of appeal of the Turnover Order. On March 27, 2025, Appellants filed their statement of issues, designation of the record, and the applicable transcripts. On April 10, 2025, Appellee filed his counter-designation of the record. Appellee's excepts of the record were filed

contemporaneously herewith. The Panel has jurisdiction pursuant to Federal Rule of Bankruptcy Procedure 8002(a)(1).

## II.

## <u>SUMMARY OF ARGUMENT</u>

Prior to filing the Turnover Motion and entry of the Turnover Order, Appellee commenced an adversary proceeding seeking to quiet title to the June St. Property. The Debtor's bankruptcy schedules reflected that the June St. Property was owned 50% by the Debtor and 50% by a marital deduction trust of the Debtor's deceased spouse; however, the deed to the June St. Property reflected that it was owned by the Debtor's living trust. The Bankruptcy Court determined that the June St. Property is property of the Debtor's estate, and that the Debtor's living trust is "self-settled," and the *res* therein not insulated from the claims of creditors. While the Bankruptcy Court's ruling regarding the June St. Property is the subject of a separate appeal, the Debtor and the other defendants only recently sought a stay of the Bankruptcy Court's order and that request was denied. *See* [Bankr. Docket Nos. 1049 and 1050]. As such, all orders regarding the Bankruptcy Court's findings relating to the June St. Property remain effective and fully enforceable today.

Appellee filed the Turnover Motion because the Debtor would not voluntarily turnover possession of the June St. Property following the Bankruptcy Court's order quieting title. At the hearing on the Turnover Motion, Appellee

established, and the Bankruptcy Court found, that the June St. Property is property of the estate, has substantial value, and is the type of property that is governed by section 363 of the Bankruptcy Code thereby satisfying the turnover requirements under section 542(a) of the Bankruptcy Code. The Appellants appealed the Turnover Order but have not sought a stay of such order remains effective and fully enforceable today.

The opposition to the Turnover Motion and the Opening Brief are nothing more than attempts to relitigate the Bankruptcy Court's determination that the June St. Property is in fact property of the Debtor's estate. Appellants' appeal herein is an impermissible collateral attack on the Bankruptcy Court's determination that the June St. Property is property of the Debtor's estate. Any such argument should be left to the independent and separate appeal of the order making that determination, especially when Appellants' arguments in the Opening brief are word-for-word the same points they argues unsuccessfully before the Bankruptcy Court. However, here, Appellants fail to provide a single citation to the record on appeal in support of their position.

The substantive portions of the Trustee's Answering Brief is broken into three parts. Part III contains citations to the facts in the record on appeal, which encompass the two excerpts of record filed by Appellants [B.A.P. Docket Nos. 6 and 7] and the excerpt of record filed by Appellee contemporaneously herewith. Part IV of the Answering Brief is broken into three parts. First, it shows why the

Bankruptcy Court's approval of the Turnover Motion and entry of the Turnover Order were well supported by the facts and law. Second, it shows that the Opening Brief does not contain any citations to the record on appeal and discusses why the brief should be stricken. Third, it shows why the appeal is an impermissible collateral attack on the Bankruptcy Court's separate determination that the June St. Property is property of the estate. Part V of the Answering Brief addresses each of the seven issues the Appellants are attempting to relitigate relating to an independent matter that is subject to a different appeal.

For the reasons set forth herein, Appellee respectfully requests the Panel to affirm the Bankruptcy Court's entry of the Turnover Order.

## III.

## STATEMENT OF THE CASE

### A.    The Debtors' Schedules of Assets and Liabilities

Prior to the Trustee's appointment, the Debtor filed his schedules of assets and liabilities ("**Schedules**") and statement of financial affairs (the "**SOFAs**"), pursuant to section 521(a) of the Bankruptcy Code. (ER 446-502). The Schedules disclose that the Debtor's home located at 322 N. June St., Los Angeles, CA (the "**June St. Property**") is 50% owned by the Debtor's bankruptcy estate and 50% owned by the Marital Deduction Trust (the "**MDT**") of Erika Klein ("**Erika**"). (ER 449). In the SOFAs, the Debtor also disclosed that he had not "[w]ithin 10 years before [he] filed for bankruptcy, . . . [transferred] any property to a self-settled trust

or similar device of which [he is] a beneficiary?" (ER 486). The Debtor executed the Schedules and SOFAs under penalty of perjury. (ER 446).

## B.   June St. Property Deed and Klein Living Trust

The real property deed (the "**June St. Deed**") for the June St. Property reflects that it is owned by "Leslie Klein and Erika Noemi Klein, as Trustee under the Klein Living Trust of 1975." (the "**Klein Living Trust of 1975**"). (ER 532).

The Debtor and his former spouse, Erika, formed the *Second Amended Klein Living Trust*, dated April 8, 1990 (the "**Klein Living Trust**"). (ER 504-530).

The record reflects that each of the Appellants admitted that the ownership of the June St. Property was continuously held by the Klein Living Trust of 1975 and then by the Klein Living Trust when the Klein Living Trust of 1975 was amended and superseded by the Klein Living Trust. (ER 753-759, 760-766, 767-773, 774-780, 781-787).

## C.   The June St. Action and Appellants' Answer

The Trustee filed a complaint (the "**Complaint**") in the Bankruptcy Court, Adv. Case No.: 2:24-ap-01140 (the "**June St. Action**"), seeking to: (a) quiet title of June St. Property; (b) avoid any transfer of the June St. Property from the *Second Amended Klein Living Trust*, dated April 8, 1990 (the "**Klein Living Trust**") to the MDT and any other sub-trusts of the Klein Living Trust; and (c) avoid Barbara's (the Debtor's current spouse) unrecorded life estate in the June St. Property. (ER 440-558).

In response to the filing of the Complaint, the Appellants requested additional time to respond to the Complaint. The Trustee agreed, and the parties entered into a stipulation (the "**Extension Stipulation**"), which provided the Appellants with an extended deadline to respond to the Complaint. (ER 562-567).

The Extension Stipulation provides that "**Each of the Defendants acknowledge being duly served with a copy of the FAC [Complaint] and summons**." (ER 563) (emphasis added). The Extension Stipulation was executed by the Debtor, as co-counsel for the Debtor and each of the subject trusts, and also executed by the Debtor **in his capacity as trustee of**: (a) the Second Amended Klein Living Trust of 1990, (b) Marital Deduction Trust of Erika Klein (*i.e.*, the MDT), (c) Survivors Trust of Leslie Klein, and (d) Leslie Klein. Each of the signature lines for the subject defendants clearly reflects that the trustees of the above-described trusts acknowledged being duly served and agreed to a new deadline to answer the Complaint. (ER 564-565). The Bankruptcy Court approved the Extension Stipulation. (ER 583-584)

Appellants filed a consolidated answer (the "**Answer**") to the Complaint (ER 585-621). In the Answer, and contrary to what the Debtor disclosed in his Schedules, the Appellants represented that the June St. Property is wholly owned by the MDT because 50% of the June St. Property that was owned by the Debtor (through a certain Survivor's Trust of Leslie Klein (the "**Survivor's Trust**")) was transferred to the MDT. (ER 588). Such alleged transfer – for which there has

never been any proof or evidence – is again contrary to the Debtor's sworn representation that he had not transferred any assets to a trust in the ten years prior to the filing of this bankruptcy case. (ER 486)

**D.    Motion to Join Necessary Parties**

Appellants filed the *Motion to Join Necessary Parties* (the "**Joinder Motion**") in the June St. Action, whereby they sought to join the Debtor's adult offspring to the June St. Action because they are purportedly beneficiaries under one of the sub-trusts under the Klein Living Trust referred therein as the credit trust (the "**Credit Trust**"). (ER 651-660). The Bankruptcy Court entered an order denying the Joinder Motion (the "**Order Denying Joinder Motion**"). (ER 1353-1356). The Order Denying the Joinder Motion is a final order because it was never appealed.

**E.    The Trustee's Summary Judgment Motion**

On September 20, 2024, the Trustee filed a *Motion for Summary Judgment on All Claims for Relief Against Defendants* (the "**MSJ**") seeking summary judgment on all claims for relief as set forth in the Complaint. (ER 692-1266)  The MSJ was granted by order entered on December 20, 2024 (the "**MSJ Order**") (ER 1467-1468). The Bankruptcy Court held that there was no evidence showing that the Debtor has transferred the Property from Klein Living Trust to any of its sub-trusts. (ER 281-282). Plus, even if the Debtor had made such transfer, it would not have mattered because the Klein Living Trust, and the sub-trusts thereunder

(including the Marital Deduction Trust), are self-settled and as a result the *res* held by any such trusts are property of the Debtor's estate. (ER 282-288)

On January 6, 2025, the Debtor and the other defendants in the June St. Action filed an appeal of the MSJ Order. No request to stay the MSJ Order was made, and such order continues to be unstayed and enforceable. The appeal of the MSJ Order is pending before the Bankruptcy Appellate Panel for the Court of Appeal of the Ninth Circuit (the "**BAP**"), as BAP Case No. 25-1002 and has been fully briefed by the parties.

## F.    The Turnover Motion

After the Court entered the MSJ Order, the Trustee filed a *Motion for Order to Restore Possession of the Property Located at 322 N. June St., Los Angeles, California to the Trustee and Compelling Debtor to Vacate the Property* (the "**Turnover Motion**"), seeking entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 542(a), to restore possession of the Property to the Trustee and to compel the Debtor and all other occupants to vacate the Property. (ER 1510-1525)

On February 13, 2025, the Bankruptcy Court approved the Turnover Motion by entering the Turnover Order. (ER 5-7). The Bankruptcy Court's reasons for granting the Turnover Motion are set forth in the transcript of the hearing. (ER 425-431). The Turnover Order required the Debtor and all other occupants to

vacate and deliver possession of the Property to the Trustee within thirty (30) days after entry of the Turnover Order (*i.e.*, by no later than March 17, 2025).[1] (ER 5-7)

The Turnover Over was never stayed. After the Debtor failed to vacate and turnover possession of the June St. Property to the Trustee, the Trustee filed a contempt motion seeking to enforce the Turnover Order. The Bankruptcy Court granted that motion and authorized to employ the United States Marshal Service to remove the Appellants and turnover possession of the June St. Property to the Trustee.

## IV.

## <u>STANDARD OF REVIEW</u>

The applicable standard of review of the bankruptcy Court's conclusions of law are reviewed de novo, and its findings of fact are reviewed for clear error. *Aalfs v. Wirum* (*In re Straightline Invs., Inc.*), 525 F.3d 870, 876 (9th Cir. 2008). When applying the abuse of discretion test, this Court should first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) If the bankruptcy court identified the correct legal rule, then this Court determines whether the bankruptcy court's "application of the correct legal standard [to the facts] was (1) illogical, (2) implausible, or (3) without support in

---

1 The 30th day following the entry of the Turnover Order was Saturday, March 15, 2025. Accordingly, Bankruptcy Rule 9006(a)(1)(C) continues the deadline to vacate the Property to Monday, March 17, 2025.

inferences that may be drawn from the facts in the record." *Id.* (internal quotation marks omitted). If the bankruptcy court did not identify the correct legal rule, or its application of the correct legal standard to the facts was illogical, implausible, or without support in inferences that may be drawn from the facts in the record, then the bankruptcy court has abused its discretion. *Id*.

## V.
## THE OPENING BRIEF IS AN IMPERMISSIBLE ATTACK ON THE MSJ ORDER AND FAILS TO ADDRESS THE BANKRUPTCY COURT'S APPROVAL OF THE TURNOVER MOTION

The Opening Brief does not contain **any** citations to the record on appeal. The seven issues raised in the Opening Brief each relate to Appellants' dispute with the MSJ Order and fail to address the sole issue that is before this Court: was the Bankruptcy Court's approval of the Turnover Motion supported by the facts and the law.

In addition, Appellants' Opening Brief is nothing more than an impermissible collateral attack on the MSJ Order because it raises the exact same issues and arguments that were already litigated and resolved by the Bankruptcy Court in the June St. Action, which are now fully briefed before this Court pursuant to a separate and independent appeal of the MSJ Order. Any attack on the MSJ Order must and can only be addressed in the June St. Action and any appeal thereof and not by way of an appeal of the Turnover Order.

**A.      The Turnover Order Should be Affirmed
Because the June St. Property is Property of the
Estate, in the Debtor's Possession and Has Substantial Value**

The Bankruptcy Code provides that:

> (a) Except as provided in subsection (c) or (d) of this section, an entity other than a  custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363, of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property, unless such property is of inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).

A motion for turnover of property of the estate has the following requirements: (a) the request for turnover must occur during the bankruptcy case, (b) the property must be property of the debtor's estate, (c) the party targeted by the turnover request must either have or had possession of the property, and (d) is the type of property that a trustee may use under section 363 of the Bankruptcy Code and must not have inconsequential value. *Shapiro v. Henson*, 739 F.3d 1198, 1200-1202 (9th Cir. 2014). If a motion for turnover is directed at the debtor, the party seeking turnover may proceed by motion. Bankruptcy Rule 7001(1).

There is no dispute that the June St. Property is an asset of the Debtor's estate because the Bankruptcy Court quieted title to the June St. Property in the name of the Debtor's estate by entry of the MSJ Order. (ER 1467-1468). The general rule is that the judgment entered by a trial court (*e.g.*, a bankruptcy court) becomes effective and enforceable as soon as it is entered and there is no

suspended effect pending appeal unless a stay is entered. *In re Copper Antitrust Litigation*, 436 F.3d 782, 793 (7th Cir. 2006). Appellants have not obtained a stay of the MSJ Order. As a result, the Bankruptcy Court's findings, and conclusions in the MSJ Order (ER 1467-1468) and ruling on the record of the hearing for the MSJ (ER 181-202) remain fully enforceable by the Trustee.

As set forth in the transcript of the hearing on the Turnover Motion (ER 419-438), the Bankruptcy Court held that the June St. Property is: (a) in the possession of the Debtor (ER 427), (b) property of the Debtor's estate (determined by virtue of the MSJ Order) (ER 427-428), and (c) is the type of property that the Trustee may use, sell, or lease under section 363 and is not of inconsequential value. (ER 428). The Trustee believes that substantial equity would be derived from the sale of the Property, which would benefit creditors and be advantageous to the Estate, and the Bankruptcy Court agreed. (ER 429).

As reflected in the Opening Brief, Appellants do not discuss, analyze, or explain why the Bankruptcy Court's ruling and entry of the Order did not satisfy the legal and factual standard under section 542(a) of the Bankruptcy Code. By the MSJ Order, the Bankruptcy Court quieted title to the June St. Property and determined that it is property of the Debtor's estate. Absent a stay of the MSJ Order or reversal by an appellate court, the MSJ Order is effective and enforceable against the Appellants who are bound by the Bankruptcy Court's findings.

**B.** **The Opening Brief Should Be Stricken Because It**
      <u>**Does Not Contain Any Citations to the Record on Appeal**</u>

Appellants' Opening Brief does not contain a single citation to the record on appeal and there is virtually no legal authority regarding the Bankruptcy Court's adjudication of the Turnover Motion. The Federal Rules of Bankruptcy Procedure require that the "argument [in Appellants' Opening Brief], which must contain the appellant's contentions and the reasons for them, with citations to authorities and parts of the record on which the appellant relies." Bankruptcy Rule 8014(a)(8). The Opening Brief, however, contains few if any citations to legal authorities and **<u>no</u>** citations to facts included in the record on appeal. As a result, Appellants' arguments in the Opening Brief are presented in a vacuum without regard to the facts that might support or undermine their arguments on appeal.

Neither this Court nor this Appellee should be required to search the entire record to piece together the case the Appellants are trying to make. *Dela Rosa v. Scottsdale Memorial Health Systems, Inc.*, 136 F.3d 1241, 1243 and 1244 (9th Cir. 1998); *Syncom Capital Corp. v. Wade*, 924 F.2d 167, 169 (9th Cir. 1991); Federal Rule of Appellate Procedure 10(b)(2); Rule 8018(b)-1 of the Rules of the United States Bankruptcy Appellant Panel of the Ninth Circuit.

The Opening Brief should be stricken because it is unsupported by the facts in the record on appeal. Plus, Appellants fail to contest the Bankruptcy Court's disposition of the Turnover Motion (*i.e.*, was the turnover proper) but instead attempt to relitigate the issues in the June St. Action that are separate and apart

from the Turnover Motion. Any relitigation of the issues Appellants lost in the June St. Action should be left to that action in its separate appeal.

## C. The Issues Raised in the Opening Brief are an Impermissible Collateral Attack on the MSJ Order

Unlike a direct appeal, a collateral attack questions the validity of a judgment or order in a separate proceeding that is not intended to obtain relief from the judgment. *Uecker & Assocs. v. L.G. Hunt & Assocs.* (*In re Am. Basketball League, Inc.*), 317 B.R. 121, 128 (Bankr. N.D. Cal. 2004) (citing 18 Moore's Federal Practice, § 131.02[2]). A collateral attack seeks, through the second suit, to avoid or evade the earlier judgment, or to deny its force and effect. *Id.* Even where the second action has an independent purpose and contemplates some other relief, it is a collateral attack if, in some fashion, it would overrule a previous judgment. *Id.*

Appellants may not invoke this Court's jurisdiction to collaterally attack the MSJ Order for the purpose of adjudicating an issue (*i.e.*, is the June St. Property rightfully property of the Debtor's estate) when that issue was already decided by an independent order (*i.e.*, MSJ Order) and such order is not the subject of appellate review by this Court. *PG&E v. FERC*, 464 F.3d 861, 868 (9th Cir. 2006) (holding that a party may not collaterally attack one FERC order through the independent litigation of a separate and independent FERC order).

The collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313,

14

(1995) ("We have made clear that it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decisions are to be respected."); *see also*, *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 902 (9th Cir. 2001) (holding that "[t]he collateral attack doctrine precludes litigants from collaterally attacking the judgments of other courts."); *Nat'l Am. Ins. Co. of Cal. v. Certain Underwriters at Lloyd's London*, 93 F.3d 529, 540 (9th Cir. 1995) (this court does not have jurisdiction over "[o]rders that could not have affected the outcome, i.e., orders not material to the judgment").

While the Trustee acknowledges that holding in *Celotex* and the other Ninth Circuit cases cite above speak to an attack of judgments of "other courts," the principle still applies here because Appellants are attempting to collaterally attack the MSJ Order by their appeal of the Turnover Order. Any attack of the MSJ Order may only be addressed in the appeal of the MSJ Order pursuant to issues on appeal and the record established in the appellate proceeding that governs the review of the MSJ Order. Until the MSJ Order is stayed (which has never happened) or reversed, it is effective, enforceable, and binding on Appellants and they cannot use a separate and independent proceeding (*i.e.*, appellate review of the Turnover Order) to obtain this Panel's review of a matter that is not under its consideration.

For these reasons, the Panel should affirm the Bankruptcy Court's entry of the Turnover Order.

# VI.
## TO THE EXTENT THE PANEL CONSIDERS THE ARGUMENTS IN THE OPENING BRIEF THEY SHOULD BE SUMMARILY DISMISSED BECAUSE THEY ARE FACTUALLY INCORRECT AND NOT SUPPORTED BY APPLICABLE LAW

The seven issues raised in the Opening Brief should be dismissed by the Panel because they are not supported by the record nor the law that governed the Bankruptcy Court's determination that the June St. Property is property of the Debtor's estate.

**A.     The Bankruptcy Court Properly Granted Judgment Quieting Title To The June St. Property With Respect To The Parties Named In The Adversary Proceeding**

> 1.     The Trustee Sued the Known Parties Asserting an Interest in the June St. Property

The Schedules disclosed that the June St. Property is 50% owned by the Debtor's bankruptcy estate, and 50% owned by the MDT of the Debtor's deceased spouse, Erika Klein. (ER 449). However, in the Answer, the Debtor and the other Appellants changed their story (without any evidence) representing to the Bankruptcy Court that:

> Leslie Klein, as trustee of the MDT, acquired from Leslie Klein, as trustee of the Survivor's Trust, all of the Survivor's Trust 50% interest in the June Property as a bona fide purchaser for value. As a result, **Leslie Klein, as trustee of the MDT, owns all right, title and interest in the June Street Property** and neither the Survivor's Trust nor the bankruptcy estate holds any interest in the June Street property, except for Leslie Klein's life estate.

(ER 588) (emphasis added).

In response, the Trustee's claim for quiet title was brought against the MDT but also the Debtor, the Klein Living Trust, the Survivor's Trust, and Barbara – all of whom are the Appellants. (ER 441-442). When the Bankruptcy Court found that the June St. Property is property of the Debtor's estate, each of the Appellants became bound by such ruling. (ER 281-289).

The Trustee is not required to sue every conceivable party to ensure that title of the June St. Property is not clouded. Instead, the Trustee should sue those parties that have asserted a competing interest in the June St. Property. If any other party claims an interest in the June St. Property that party must file an adversary proceeding in the Bankruptcy Court seeking a determination that such party holds a valid and enforceable interest in the June St. Property. The Credit Trust and the Debtor's offspring have failed to take such action. As a result, the Bankruptcy Court's ruling that the June St. Property is property of the estate is effective and enforceable against the Appellants. No other parties have shown they have any interest in the June St. Property. As a result, the Bankruptcy Court's MSJ Order fully empowers the Trustee to administer the June St. Property as property of the Debtor's estate subject to and in accordance with the Bankruptcy Code. Because the June St. Property is property of the estate, it is by definition subject to the mandatory requirement of turnover under section 542(a) of the Bankruptcy Code.

2.  The Trustee's Quiet Title Judgment
    Binds All Parties Sued in the June St. Action

By the Complaint, the Trustee sued the Debtor, Leslie Klein (who also

served as the trustee under the Klein Living Trust, Survivor's Trust, and MDT), the

Klein Living Trust, Survivor's Trust, MDT, and Barbara. (ER 441-442).

In a quiet title action, each party must plead and prove his or her own claim

to the property in question. *Yokeno v. Mafnas*, 973 F.2d 803, 808 (9th Cir. 1992).

The Trustee properly stated a claim for quiet title because the June St. Property is

specifically described in the Complaint. (ER 441 and 532). The Complaint

describes who the Trustee believes currently owns the June St. Property (*i.e.*, the

Debtor). (ER 443-444). The Complaint describes the adverse claims for which a

determination is sought (*i.e.*, the Debtor, Klein Living Trust, MDT, Survivor's

Trust, and Barbara). (ER 442). The Complaint seeks a determination as of the

Petition Date that the Debtor's estate owns the June St. Property. (ER 443-444).

The Complaint includes a prayer for the determination of title against the adverse

claims (*i.e.*, neither the MDT or any other party, other than the Debtor's estate,

holds a valid interest in the June St. Property). (ER 444). *Metcalf v. Drexel*

*Lending Grp.*, No. 08-CV-00731 W POR, 2008 U.S. Dist. LEXIS 87420, *14

(S.D. Cal. Oct. 29, 2008).

A complaint does not fail to state a claim for quiet title if it does not name

parties who might claim an interest in the subject property. *Seror v. Stone (In re*

*Automated Fin. Corp.)*, 2011 Bankr. LEXIS 291 (Bankr. C.D. Cal. Jan. 25, 2011)

(citing *Blackburn v. Bucksport & E. R. R. Co.*, 7 Cal. App. 649 (Cal. App. 1908) (failure to name parties claiming adverse interests in a quiet title action does not go to the cause of action). As the legislative comment to section 762.010 of the California Code of Civil Procedure makes clear, the failure to join any other adverse claimants in a quiet title action merely results in a judgment that does not bind those unnamed parties, but it does bind the parties that are named.

Here, Appellants in this appeal are named in the Complaint seeking to quiet title of the June St. Property. (ER 441-442). As a result, the MSJ Order binds the Appellants and the fact that another entity might later claim an interest in the June St. Property does not render the MSJ Order void or unenforceable against Appellants. Appellants' attempt to reverse the Bankruptcy Court's entry of the MSJ Order cannot be sustained by their late and unsubstantiated attempts to establish others might hold an interest in the June St. Property, especially when the Debtor never represented to any other party the June St. Property was subject to any other competing interest until the Trustee undertook to control the June St. Property for the benefit of the bankruptcy estate.

> 3. Appellants' Attempt to Join Other
>    Parties was Denied, Never Appealed, and is Binding

Appellants filed the Joinder Motion in the June St. Action, whereby they sought to join the Debtor's adult offspring to the June St. Action because they are purportedly beneficiaries under the Credit Trust. (ER 651-660-164). The Bankruptcy Court entered the Order Denying Joinder Motion. (ER 1353-1356). In

the ruling, the Bankruptcy Court held that the Debtor's offspring were not necessary parties and their interest in the MDT or the Credit Trust depended upon there being property remaining in such trust at the time of the Debtor's death (which has not occurred). (ER 434-435). In addition, the Bankruptcy Court held that the Klein Living Trust, the MDT, the Survivor's Trust, and the other trust(s) created thereunder are "self-settled" and the property held by such trust(s) cannot be insulated from the Debtor's creditors. (283-288).

The deadline to appeal the Order Denying Joinder Motion expired on November 1, 2024, with no appeal having been taken. An order is final once the time for appeal has elapsed. *Ayers v. Richmond*, 895 F.2d 1267, 1271 (9th Cir. 1990). A party's failure to file a timely notice of appeal constitutes a waiver of such issues or claims not appealed. *Turner v. Wells Fargo Bank NA* (*In re Turner*), 859 F.3d 1145, 1148 n. 4 (9th Cir. 2017).

Appellants attempted to join "necessary" parties (*i.e.*, parties purporting to hold an interest in the June St. Property) and that request was denied. They did not appeal the Order Denying Joinder Motion and as a result they have expressly waived such issues or claims as they pertain to the relief related to the quiet title claim with respect to the June St. Property.

**B.** **The Complaint Was Duly Served on the Affected Parties Who Accepted Service Of The Complaint And Waived Any Argument The Bankruptcy Court Cannot Enter Judgment Against Trusts**

    1.    The Trustees of the Second Amended Klein Living Trust and the Sub-Trusts Were Duly Sued and Expressly Accepted Service

The Complaint names the Debtor, the Klein Living Trust, MDT, Survivor's Trust, and Barbara (but not the Credit Trust, which never asserted an interest in the June St. Property). (ER 441-442). The Debtor has never disputed that he is the trustee of the Klein Living Trust and all the sub-trusts thereunder (*i.e.*, MDT and Survivor's Trust).

In response to the filing of the Complaint, the Appellee and the Appellants entered into the Extension Stipulation, which provided Appellants with additional time to respond to the Complaint. (ER 562-567).

The Extension Stipulation provides that "**Each of the Defendants acknowledge being duly served with a copy of the FAC [Complaint] and summons**." (ER 563) (emphasis added). The Extension Stipulation was executed by the Debtor, as co-counsel for the Debtor and each of the subject trusts, and also executed by the Debtor **in his capacity as trustee of**: (a) the Second Amended Klein Living Trust of 1990, (b) Marital Deduction Trust of Erika Klein, (c) Survivors Trust of Leslie Klein, and (d) Leslie Klein. Each of the signature lines for the subject defendants clearly reflects that the trustees of the above-described trusts acknowledge being duly served and agreed to a new deadline to answer the

Complaint. (ER 564-565) (emphasis added). The Bankruptcy Court approved the Extension Stipulation. (ER 583-584).

It is simply not credible for the Appellants to argue that the representative parties of the Debtor's various self-settled trusts (*i.e.*, the trustees of such trusts) were not properly sued when the <u>trustee</u> for each of the trusts (*i.e.*, the Debtor) executed the Extension Stipulation in the capacity <u>as the trustee of the applicable trust</u> and acknowledged service of the Complaint.

2.  Appellants Waived Any Defense
    <u>Regarding Lack of Capacity to be Sued</u>

As reflected above, the Trustee sued the Debtor, which is not in dispute, and the Debtor confirmed that he is in fact the trustee of the Klein Living Trust and all the sub-trusts thereunder. That alone should end the inquiry. Notwithstanding the foregoing, any judgment or order arising from the June St. Action against the Klein Living Trust, and each of the sub-trusts thereunder, are duly effective against each of the Appellants because they never made a "direct negative averment" in the Answer to support a claim for a lack of capacity to be sued. The failure to make a "direct negative averment" results in the waiver of such defense at trial on appeal.

While the Federal Rules of Civil Procedure do not require a plaintiff to aver capacity, it does require a defendant to plead absence of capacity. *Lang v. Tex. & Pac. Ry. Co.*, 624 F.2d 1275, 1277 (5th 1980). A defendant must challenge the plaintiff's allegations and a "specific negative averment must be made in the responsive pleading or by motion before the pleading." *De Saracho v. Custom*

*Food Mach., Inc.*, 206 F.3d 874, 878 (9th Cir. 2000). A defendant that fails to make a "specific negative averment in its answer, or at anytime [sic] until the appeal, is deemed to have waived that defense." *Summers v. Interstate Tractor & Equipment Co.*, 466 F.2d 42, 50 (9th Cir. 1972); *see also*, *Swaim v. Moltan Co.*, 73 F.3d 711 (7th Cir. 1996) (holding that defendant against whom default judgment was entered would not be allowed to argue on appeal that it lacked capacity to be sued); *Howerton v. Designer Homes by Georges, Inc.*, 950 F.2d 281 (5th Cir. 1992) (holding that defendant did not object to complaint naming corporation as defendant in "every capacity" waived claim that it could be held liable only in limited capacities).

As reflected in the Extension Stipulation (ER 562-567), the Answer (ER 585-621), and all the remaining briefing in the appellate record of the June St. Action, the Debtor and his co-defendants never made a "direct negative averment" in the Answer that they cannot be sued for lack of capacity. Moreover, they never raised this issue in their response to the Trustee's motion for summary judgment. Even if they had raised this issue at the summary judgment stage, it likely would have been too late. *Santos v. Alaska Bar Assoc.*, 618 F.2d 575 (9th Cir. 1980) (holding that defense to suit must be raised before appeal or issue is waived). The Appellants do not dispute they failed to make a "direct negative averment" in connection with the Answer and before they appealed. As a result, any such claim or defense on appeal has been waived and may be not litigated on appeal.

## C.    The Klein Living Trust And The Sub-Trusts
## Are Self-Settled And The Trust Res Is Property Of The Estate

The Bankruptcy Court found that June St. Property is owned by the Debtor and is property of the Debtor's bankruptcy estate. (ER 276-288 and 424-429). Any of the alleged trusts that assert an interest in the June St. Property (*e.g.*, the Klein Living Trust, the Survivor's Trust, or the MDT) are "self-settled" (*i.e.*, the Debtor is the beneficiary of each such trust, the trustee for each trust, and as trustee has unfettered control and discretion over the assets of each trust). A "self-settled" trust is <u>statutorily</u> precluded from shielding the June St. Property (or any other assets) from creditors with claims against the Debtor by virtue of any spendthrift clause in the Klein Living Trust.

Upon the filing of a petition under the Bankruptcy Code, an estate is created comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a) (1988); *Moses v. Southern California Permanente Med. Group*, 167 F.3d 470, 473 (9th Cir. 1999). Section 541 of the Bankruptcy Code, however, excludes from the estate property that contains a "restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law." 11 U.S.C. § 541(c)(2); *Moses*, 167 F.3d at 473. Under section 541(c)(2) of the Bankruptcy Code, an anti-alienation provision in a valid spendthrift trust created under state law is an enforceable "restriction on the transfer of a beneficial interest of the debtor" and

thus serves to exclude the trust corpus from the bankruptcy estate. *Patterson v. Shumate*, 504 U.S. 753, 757-58 (1992).

California law recognizes the validity of spendthrift trusts. *In re Neuton*, 922 F.2d 1379 (9th Cir. 1990) (citing Cal. Prob. Code §§ 15300 *et seq.*). However, the critical inquiry in determining the validity and enforceability of a spendthrift clause under California law is whether the trust's beneficiaries exercise excessive control over the trust. *See, e.g., In re Salkin*, 526 B.R. 31 (Bankr. C.D. Cal. 2015); *In re Witwer*, 148 B.R. 930, 937 (Bankr. C.D. Cal. 1992). California law forbids a participant with excessive control over his or her trust to shield that trust with an anti-alienation provision lacking true substance.

Under California law, a settlor of a trust containing a spendthrift clause cannot also function as beneficiary of that trust and use such clause to prevent creditors from reaching the trust's corpus to pay their claims. Cal. Prob. Code § 15304(a). A trust where the settlor acts as the beneficiary is commonly referred to as a "self-settled" trust. In this context, California law **voids** spendthrift clauses in self-settled trusts to prevent individuals from placing their property beyond the reach of their creditors while at the same time still reaping the bounties of such property as a beneficiary of the trust. *Nelson v. California Trust Co.*, 33 Cal. 2d 501, 202 P.2d 1021, 1021 (Cal. 1949) (holding that where a debtor was the sole beneficiary under a trust, all the property in the trust is subject to the claims of the debtor's creditors).

In *Salkin*, a husband and wife were co-settlers of their living trust and also served as co-trustees during their lifetime. *Salkin*, 526 B.R. at 33. The husband and wife were income and principal beneficiaries under the trust. *Id.* Following the husband's death, the wife continued to serve as trustee under the trust and remained as an income and principal beneficiary under the trust. *Id.* The trust included a "spendthrift" provision that precluded any beneficiary from alienating, encumbering, or hypothecating his or her interest in trust principal or income and precluding such interest from becoming subject to claims of such beneficiary's creditors. *Id.* The court held that the income and principal in the trust were property of the debtor's (*i.e.*, the wife's) estate because section 15304(a) of the California Probate Code renders the spendthrift provision of the trust unenforceable against a transferee (in this case the chapter 7 trustee) or a creditor of the beneficiary. *Id.* at 33 and 34. Further, the court held that all the assets of the trust were property of the estate because the debtor as the trustee of the trust was permitted to control the trust's assets. *Id.* at 34.

Similarly, in *Cutter v. Seror* (*In re Cutter*), 398 B.R. 6, 20 and 21 (B.A.P. 9th Cir. 2008), the court held that because the debtor had access to potentially all of the trust's assets and income to maintain his standard of living and possessed the power to "invade" the corpus of the trust, and the right, at his sole discretion, to make distributions to provide for his health, education, or support and maintenance

in his customary standard of living that the spendthrift clause in the trust was unenforceable against his creditors.

Here, the record is substantially similar, if not identical, to the facts in *Salkin* and *Cutter*. The Debtor and Erika were co-settlors of the Klein Living Trust. (ER 664). Under the Klein Living Trust, the Debtor and Erika served as co-trustees and during their lives were both income and principal beneficiaries. (ER 664). Following Erika's death, the Debtor continued in his capacity as trustee "[f]or all trusts under this instrument . . ." (ER 677). The Debtor is the trustee, income beneficiary, and principal beneficiary under the Klein Living Trust and all trusts created thereunder. (ER 663, 671-672, 673, and 676).

The Debtor, as trustee under the Klein Living Trust, Survivor's Trust, MDT, and the Credit Trust, is authorized to "self-deal." This language permits him, as the trustee under each of the applicable trusts, to loan money to the trust and encumber trust property for the purpose of securing such loans, to purchase and exchange assets, and to abandon and sell assets of the applicable trusts. (ER 678). Further, the terms of the Klein Living Trust, Survivor's Trust, and the MDT each provide the trustee of those trusts (*i.e.*, the Debtor) unfettered discretion to distribute assets of the applicable trust to the income and principal beneficiary, who is also the Debtor. (ER 679).

Accordingly, based upon the foregoing controlling law and the record on appeal, the Klein Living Trust and the sub-trust are "self-settled" and the June St. Property is property of the Debtor's estate. (ER 276-288 and 424-429).

The June St. Deed reflects that the June St. Property is owned by the Klein Living Trust. (ER 532). The record of an instrument or other document purporting to establish or affect an interest in property is *prima facie* evidence of the content of the original recorded document "and its execution and delivery by each person by whom it purports to have been executed." Cal. Evid. Code § 1600(a); *see Thomas v. Peterson,* (1931) 213 C. 672, 674, 3 P.2d. 306). Section 1603 of the California Evidence Code establishes a *prima facie* rebuttable presumption that the Klein Living Trust, named in a recorded deed, is the beneficial owner of the June St. Property. *Yee v. Panrox Internat. (USA), Inc*., 97 Cal. App. 5th 470, 479 (2nd Dist. 2023) *Carloss v. County of Alameda*, (1st Dist. 2015) 242 Cal. App. 4th 116.

Similarly, title is generally understood to denote ownership or "the legal right to control and dispose of property" Black's Law Dict. (8th ed. 2004, p. 1522, col. 2). Further, under California's "form of title" presumption, the description in a deed as to how title is held presumptively reflects the actual ownership status of the property. *In re Marriage of Fossum*, 192 Cal. App. 4th 336, 344 (Cal. App. 2011). This common law presumption is codified in California Evidence Code § 662, which provides:

> The owner of the legal title to property is presumed to be the owner of the full beneficial title.

This presumption may be rebutted *only by clear and convincing proof*. The presumption is based on the promotion of a public policy that favors the stability of titles to property.[2] *Id*. at 345, citing to *Brooks*, at p. 185. Similarly, a "person who exercises acts of ownership over property is presumed to be the owner. Cal. Evid. Code § 638.

The June St. Deed reflects that the June St. Property is owned by the Klein Living Trust, just as the Appellants admitted that the June St. Property is owned by the Klein Living Trust since 1990 and by prior versions of such trust (*i.e.*, the Klein Living Trust of 1975) since 1977. (ER 753-759, 760-766, 767-773, 774-780, 781-787). Moreover, there are no other valid and enforceable documents reflecting that the June St. Property is owned by any party other than the Klein Living Trust.

Even if it is assumed, *arguendo,* that the June St. Property is owned by the MDT, as the Appellants now allege, the Debtor is the settlor, trustee, and income and principal beneficiary under the Klein Living Trust (and all sub-trusts thereunder, including the MDT) who has unfettered discretion to dispose of the assets held by the Klein Living Trust (and the sub-trusts) thereby precluding the enforcement of the Spendthrift Clause in the Klein Living Trust because it and the sub-trusts are "self-settled." (ER 286). As a result, the June St. Property is property of the Debtor's estate.

---

[2] Allegations … that legal title does not represent beneficial ownership have … been historically disfavored because society and the courts have a reluctance to tamper with duly executed instruments and documents of legal title.' *In re Marriage of Brooks & Robinson* (2008) 169 Cal. App. 4th 176,185. *See also Gotlieb v. Rose(In re Khalil)*, 2015 Bankr. LEXIS 1976, *27 (Bankr. C.D. Cal. 2017).

**D.     The June St. Property Is Owned By the Klein
        Living Trust And Was Never Conveyed To Any Other Trust**

Appellants rely exclusively on *Estate of Heggstad*, 16 Cal. App. 4th 943,

950 (Cal. App. 1993) for the proposition that a properly executed and valid

declaration of trust may duly convey real property into a trust when the settlor of

such property is also trustee of the trust and the settlor's declaration expressly

provides that that he or she (as trustee) holds legal title in trust for another. The

Bankruptcy Court found that *Heggstad* did not support Appellants' argument. (ER

279-282).

However, Appellants fail to cite to any facts in the record that support that

the Klein Living Trust somehow conveyed the June St. Property into the MDT. If

the Klein Living Trust is read from start to finish nowhere in that trust does it

provide that the ownership of the June St. Property was conveyed from the Klein

Living Trust to the MDT upon Erika's death. The Klein Living Trust is unchanged

from the time it went into effect on or about April 8, 1990, through the time it was

recorded after Erika's death in April 2013. At the time the Klein Living Trust went

into effect, it reflected that it held ownership of the June St. Property (ER 530), as

reflected on the June St. Deed. (ER 532). Nothing has changed since.

The Appellants contend that the "ledgers" reflect that the June St. Property

was transferred from the Klein Living Trust to the MDT. However, the "ledgers"

are unrecorded, separate from the Klein Living Trust and MDT, not referenced by

either the Klein Living Trust or the MDT, and do not have any legal efficacy or evidence of a transfer whatsoever.

Under California Civil Code section 1092, a grant of an estate in real property may be made by providing in substance: "I, A B, grant to C D all that real property . . . ." The operative and essential element of such a deed has long been held to be the word "grant." *Klamath Land & Cattle Co. v. Roemer*, 12 Cal. App. 3d 613, 618 (Cal. App. 1970) (holding that in California the word "grant" has been used to the transfer of all estates in real property, and not solely estates in fee simple, since some time prior to 1845).

The Klein Living Trust and the underlying sub-trust do not contain any such language evidencing that the "settlor" (*i.e.*, the Debtor) intended to the transfer the June St. Property to the MDT or any other trust. Accordingly, the law in *Heggstad* does not support that the June St. Property was transferred because such trust does not reflect any evidence of the transfer, especially since the trust remains unchanged since it was formed.

**E.      The Recordation of the Klein Living Trust**
**         Upon Erika's Death Had No Consequence Because its Terms**
**         <u>Did Not Automatically Effectuate a Transfer of the June St. Property</u>**

The Klein Living Trust did not automatically effectuate the transfer of the June St. Property upon Erika's death. As a result, the recordation of the Klein Living Trust on April 11, 2013, does not prevent the Trustee from avoiding any

junior interest in the June St. Property because the recordation did not perfect a transfer.

Section 544(a)(3) of the Bankruptcy Code provides a bankruptcy trustee with "strong arm powers" which empower the trustee to avoid transfers of, or against, real property that would be junior in priority under state law to a *bona fide* purchaser for value. Section 544(a)(3) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—A bona fide purchaser of all real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that attains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

Bankruptcy courts look to prevailing state law to determine the rights of a *bone fide* purchaser for value. *In re Washburn & Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir. 1986). Under California law,

> Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.

The terms "valuable consideration" or "for value" do not necessarily mean "fair market value" but rather value that is not nominal in nature. *Horton v. Kyburz*, 53 Cal. 2d 59, 66 (1959); *Melendrez v. D & I Investment, Inc.*, 127 Cal. App. 4th 1238, 1251 (Cal. App. 2005).

Under California law, a *bona fide* purchaser without actual or constructive notice takes free of a prior equitable interest or constructive trust interest. *In re Tleel*, 876 F.2d 769, 771-72 (9th Cir. 1989); *Rafftery v. Kirkpatrick*, 29 Cal. App. 2d 503, 507-508 (Cal. App. 1938). Section 544(a)(3) of the Bankruptcy Code makes a trustee's actual knowledge irrelevant. A purchaser of real estate for value without constructive notice of a prior interest is given status as a *bona fide* purchaser. *Tleel*, 876 F.2d at 772. Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214; 3 Harry D. Miller & Marvin B. Starr, *California Real Estate* §§ 8:62, 8:63, 8:65 (2d ed. 1989).

As a *bona fide* purchaser for value, section 544(a)(3) of the Bankruptcy Code provides the Trustee with a senior ownership interest in the June St. Property because as of the Petition Date, the Debtor, through the Klein Living Trust, owned (and continues to own) 100% of the June St. Property.

Specifically, the Klein Living Trust did not predetermine the allocation or distribution of trust property among the various sub-trusts (*e.g.*, Survivor's Trust,

MDT, or Credit Trust) upon Erika's death. Instead, Article 3 of the Klein Living Trust, titled "Trust Allocation After First Spouse's Death," outlines the rules and procedures the trustee (*i.e.*, the Debtor) may use to allocate and distribute property after Erika's death. For example, Article 3(A) of the Klein Living Trust provides that:

> [t]he Marital Deduction Trust shall consist of the minimum amount that will entirely eliminate or reduce as far as possible the federal estate tax, after allowance of all other deductions . . . (ER 667-668)

> * * *

> All trusts may be funded in cash or in kind, party in each. (ER 668).

The above-cited provisions of the Klein Living Trust do not provide that specific property (*e.g.*, the June St. Property) would be transferred to the MDT, or the Survivor's Trust or the Credit Trust. Instead, any distribution or allocation of property from the Klein Living Trust to the MDT or any other trust is dependent upon the "minimum amount" of property (*i.e.*, whatever that might be) that will avoid or reduce federal taxation (*i.e.*, whatever that might be). There is no evidence in the record on appeal showing that the Debtor (who served as the sole trustee) determined how to distribute or allocate the property owned by the Klein Living Trust. Even if a distribution or allocation had occurred – and there is no evidence in the record to support that it has – the documents supporting the distribution or allocation were not recorded and as a result may be avoided.

Importantly, the Debtor's chapter 11 case was filed on February 22, 2023. After Erika's death, the Debtor recorded the Klein Living Trust on April 11, 2013. (ER 662-688), which was within 10 years of the Petition Date. The Debtor admitted under oath in the SOFAs that, in the 10 years prior to the Petition Date, he had not transferred any property from his estate to a self-settled trust or similar type of trust. (ER 446 and 486). Consequently, there should not be anything to avoid because consistent with the Debtor's representations made under oath there were not any transfers of the June St. Property.

Nevertheless, the Trustee showed, and the Bankruptcy Court held (ER 281-282), that to the extent there was any transfer of the June St. Property, any documentation of the transfer was not duly recorded as required by California law. As a result, and assuming that such transfer occurred – which the Trustee does not concede – any such purported transfer can be avoided.

As a *bona fide* purchaser for value, section 544(a)(3) of the Bankruptcy Code provides the Trustee with a senior ownership interest in the June St. Property because, at the time the petition was filed, the Debtor, through the Klein Living Trust, owned 100% of the June St. Property. The Appellants' assertions that the Trustee is not a *bona fide* purchaser for value on account of MDT's alleged ownership of the June St. Property are wholly unsupported by the record on appeal. There is no actual or constructive notice of such transfer (as there was nothing recorded in the County of Los Angeles). Plus, the Trustee was not aware, nor was

there anything in the record on appeal reflecting, that the MDT was granted any interest in the June St. Property.

As result, the Trustee, on behalf of the estate, holds a senior and perfected ownership interest in the June St. Property because MDT's alleged interest in the Property is not memorialized in a valid and enforceable writing **<u>nor</u>** recorded in accordance with applicable law. Under California law, "No trust in relation to real property is valid unless created or declared: 1. By a written instrument, subscribed by the trustee, or by his agent thereto authorized by writing; 2. By the instrument under which the trustee claims the estate affected; or, 3. By operation of law." *Bier v. Leisle*, 172 Cal. 432, 435 (1916). There is nothing in the record on appeal to substantiate that the MDT owns all or any interest in the June St. Property nor are there any other documents that reflect an ownership in the June St. Property that cannot be avoided by the Trustee.

Moreover, because the Survivor's Trust, MDT, and the Credit Trust did not contain any property, such trusts were never formed because the existence of a trust "res" is a necessary condition to the formation of any trust. *In re Honkanen*, 446 B.R. 373, 381, n.9 (B.A.P. 9th Cir. 2011) (holding that "[i]n the absence of a trust res, a fundamental requirement to form a trust, there was no express, technical or statutory trust formed . . ."); *Estate of Gardner*, 187 Cal. App. 4th 543, 552 (2010) (holding that "[t]o be valid, a trust, whether oral or written, must contain three elements: a trust res, the manifestation of a trust intent, and a proper trust

purpose. (§§ 15201, 15202, 15203)).” Consequently, Appellants had no basis to argue that the MDT, or any other trust for that matter, owned the June St. Property.

## F. Barbara's Presence In The June St. Property Was Insufficient To Put The Trustee On Notice Of Her Life Estate And Defeat His Status As A Bone Fide Purchaser

Appellants contend that Barbara holds a life estate in the June St. Property that is not subject to avoidance. To the extent Barbara holds any interest in the June St. Property, such interest was not recorded in the local county recorder's office as required by California law. As a result, the Trustee is a *bone fide* purchaser for value holding a senior and perfected interest in the June St. Property and may avoid whatever junior and unrecorded interest that Barbara might hold.

There is nothing in the appellate record that reflects Barbara's purported life estate in the June St. Property was duly recorded prior to the Petition Date, as required by California law. The Trustee, as a *bone fide* purchaser for value, holds a senior and perfected interest in the June St. Property and may avoid whatever junior unrecorded interest that Barbara might hold in the June St. Property.

Section 544(a)(3) of the Bankruptcy Code provides a bankruptcy trustee with "strong arm powers" which empower the trustee to avoid transfers of, or against, real property that would be junior in priority under state law to a *bona fide* purchaser for value. Section 544(a)(3) provides:

> The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation

37

incurred by the debtor that is voidable by—A bona fide purchaser of all real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that attains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3).

Bankruptcy courts look to prevailing state law to determine the rights of a *bone fide* purchaser for value. *In re Washburn & Roberts, Inc.*, 795 F.2d 870, 872 (9th Cir. 1986). Under California law,

Every conveyance of real property or an estate for years therein, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser or mortgagee of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded, and as against any judgment affecting the title, unless the conveyance shall have been duly recorded prior to the record of notice of action.

Cal. Civ. Code § 1214.

The terms "valuable consideration" or "for value" do not necessarily mean "fair market value" but rather value that is not nominal in nature. *Horton v. Kyburz*, 53 Cal. 2d 59, 66 (1959); *Melendrez v. D & I Investment, Inc.*, 127 Cal. App. 4th 1238, 1251 (Cal. App. 2005).

Under California law, a *bona fide* purchaser without actual or constructive notice takes free of a prior equitable interest or constructive trust interest. *In re Tleel*, 876 F.2d 769, 771-72 (9th Cir. 1989); *Rafftery v. Kirkpatrick*, 29 Cal. App.

2d 503, 507-508 (Cal. App. 1938). Section 544(a)(3) of the Bankruptcy Code makes a trustee's actual knowledge irrelevant. A purchaser of real estate for value without constructive notice of a prior interest is given status as a *bona fide* purchaser. *Tleel*, 876 F.2d at 772. Constructive notice in the context of real estate is provided by recordation of interests against the property. Cal. Civ. Code §§ 19, 1214; 3 Harry D. Miller & Marvin B. Starr, *California Real Estate* §§ 8:62, 8:63, 8:65 (2d ed. 1989).

As a *bona fide* purchaser for value, section 544(a)(3) provides the Trustee with a senior ownership interest in the June St. Property because as of the Petition Date, the Debtor, through the Klein Living Trust, owned (and continues to own) 100% of the June St. Property. To the extent that Barbara had any interest in the June St. Property pursuant to the Amendment to the Premarital Agreement, such agreement reflects that it was never recorded. (ER 217 and 498).

Agreements regarding the formation or dissolution of a marriage that affect real property are unenforceable against a bankruptcy estate unless the rights under such agreement are perfected by recordation in accordance with applicable state law. *See, e.g.*, *Perlow v. Perlow*, 128 B.R. 412, 415 (E.D.N.C. 1991) (a court approved marital dissolution agreement that provided a spouse with an interest in real property may be avoided under section 544(a)(3) of the Bankruptcy Code if it is not recorded prior to the debtor/former spouse's bankruptcy); *In re Fisher*, 67 B.R. 666, 669 (Bankr. D. Colo. 1986) (same).

The Trustee, in the shoes of a hypothetical *bona fide* purchaser for value of the June St. Property as of the Petition Date, would not have had constructive notice of Barbara's alleged interest in the June St. Property when looking at the property records in the county recorder's office because Appellants never showed that the Amendment to the Premarital Agreement was recorded. The only and the most recently recorded deed relating to the June St. Property reflects that on or about July 8, 1977, the June St. Property was granted to Leslie Klein and Erika Noemi Klein, as Trustees under the Klein Living Trust of 1975, which as amended is now the Klein Living Trust. (ER 532).

Neither Barbara nor the other Appellants contested that the Amendment to the Premarital Agreement was recorded or produced any other documents reflecting that Barbara's interest in the June St. Property was duly recorded as required by California law. This necessarily means any such interest is junior to the Trustee's interest on behalf of the estate and may be avoided, as the Bankruptcy Court held. (ER 289-293).

Furthermore, the fact that Barbara lived in the June St. Property does not suggest that she owned, held a life estate in, or held any other interest in the property. More to the point, if Barbara's presence in the June St. Property was sufficient to put the Trustee on "inquiry" notice – which it was not – there was nothing recorded prior to the Petition Date for any party to verify the interest that Barbara held. As a result, Barbara's presence alone does not defeat the Trustee's

rights as a *bona fide* purchaser for value under section 544(a)(3) of the Bankruptcy Code.

Thus, the Trustee, holding the rights and powers of a *bona fide* purchaser of real property as of the Petition Date, may avoid the unrecorded interests in the June St. Property under the Amendment to the Premarital Agreement and any other agreements written or oral that might exist but were not admitted into evidence.

## G. Appellants' Arguments Regarding Estoppel Were Never Argued And Have Been Waived And May Not Be Considered On Appeal

Appellants contend that the matters on which the Bankruptcy Court found that the Debtor was bound by judicial estoppel (ER 274-276) should not apply to other parties. It is unclear whether Appellants are contesting the applicability of estoppel to the Appellants other than the Debtor. If so, the Bankruptcy Court's Order should apply to all parties in the June St. Action. It should be noted that Appellants never objected to or otherwise contested the estoppel arguments raised by the Trustee before the Bankruptcy Court.

In the Ninth Circuit, issues not raised at the trial level are deemed waived on appeal. *Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1322 (9th Cir. 2012) ("'Although no bright line rule exists to determine whether a matter [h]as been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it.'") (quoting *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)). Thus, appellants who "made no mention" of certain issues or arguments at the trial level

are barred from relying upon them on appeal. *Armstrong v. Brown*, 768 F.3d 975, 981 (9th Cir. 2014) (relying in part on *Komatsu, Ltd. v. States S.S. Co.*, 674 F.2d 806, 812 (9th Cir. 1982)) (an issue is waived when the appellant "relied . . . exclusively" on other arguments below).

The pleadings and other documents filed by the Appellants in opposition to the Turnover Motion (ER 8-32) never contested or otherwise responded to the Trustee's estoppel arguments. Accordingly, the Appellants have waived their right to have this Court consider this issue on appeal.

## VII.

## <u>CONCLUSION</u>

The record reflects that the Bankruptcy Court carefully considered Turnover Motion, and that Appellants failed to cite to anything in the record on appeal that supports that the Bankruptcy Court failed to give due consideration to the Turnover Motion and its entry of the Turnover Order. Accordingly, for the reasons set forth herein, Appellee respectfully requests that the Turnover Order be affirmed.

Respectfully Submitted,

Dated: May 5, 2025        PACHULSKI, STANG, ZIEHL & JONES LLP

By      */s/ John W. Lucas*
            John W. Lucas

            Counsel to Bradley D. Sharp, Chapter
            11 Trustee, Appellee

## CERTIFICATE OF COMPLIANCE

1. I certify that this Brief complies with the length limitation of Fed. R. Bankr. P. 8015(a)(7) because this Brief contains 10,596 words, excluding the parts of the Brief exempt from such rule.

2. I certify that this Brief complies with the typeface and type style requirements of Fed. R. Bankr. P. 8015 because it has been prepared in a proportionately spaced typeface using Word, in 14-point Time New Roman.

*/s/ John W. Lucas*
John W. Lucas (CA Bar No. 178584)

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jlucas@pszjlaw.com

## <u>Certification Required by B.A.P. Rule 8015(a)-1(a)</u>

The undersigned certifies that the following parties have an interest in the outcome of this appeal. These representations are made to enable judges of the Panel to evaluate disqualification or recusal:

Bradley D. Sharp, solely in his capacity as chapter 11 trustee of the bankruptcy estate of Leslie Klein

Leslie Klein

*/s/ John W. Lucas*
John W. Lucas (CA Bar No. 178584)

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:   jlucas@pszjlaw.com

# <u>Certification Required by B.A.P. Rule 8015(a)-1(b)</u>

The undersigned certifies that the following are known related cases and appeals:

*Leslie Klein, et al. v. Bradley D. Sharp, chapter 11 trustee of Leslie Klein*, Case No. 25-1002.

*Leslie Klein v. Bradley D. Sharp, chapter 11 trustee of Leslie Klein*, Case No. 25-1042.

*Kenneth Klein and Shoshana Shifra Klein v. Bradley D. Sharp, chapter 11 trustee of Leslie Klein*, Case No. 25-1027

*/s/ John W. Lucas*
John W. Lucas (CA Bar No. 178584)

PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: 310/277-6910
Facsimile: 310/201-0760
E-mail:  jlucas@pszjlaw.com